UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYLINE LINARES, *et al.*, | No. C-14-3435 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS AND MOTION TO STRIKE** |
| CITIMORTGAGE, INC., | |
| Defendant. | **(Docket Nos. 33-34)** |

In their first amended complaint ("FAC"), Plaintiffs Maryline Linares and Mark Joseph Linares (collectively, "Plaintiffs") have asserted claims against Defendant CitiMortgage, Inc. ("CMI") for unfair business practices, *see* Cal. Bus. & Prof. Code § 17200, and intentional misrepresentation. Currently pending before the Court are two motions filed by CMI: a motion to dismiss and a motion to strike.[1]

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** both motions. Plaintiffs, however, have leave to amend within the parameters discussed below.

///

///

---

[1] The motion to dismiss was actually brought by both CMI and CitiCorp Mortgage Securities, Inc., Series 2007-A6 PRCC ("CMALT"). CMALT is the current beneficiary under the deed of trust for the real property at issue. *See* FAC ¶ 4. In their opposition, Plaintiffs have disavowed that they are suing anyone but CMI at this time. *See* Opp'n at 2 (stating that "CMALT is a non-party at this time" and that "CMALT is mentioned in the FAC, but not named as a defendant").

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs initiated this lawsuit in state court on May 23, 2014. *See* Docket No. 1-1, at 2 (original complaint). At the time, Plaintiffs were proceeding pro se. Subsequently, the case was removed to federal court and the complaint was challenged by a motion to dismiss and a motion to strike. *See* Docket Nos. 13-14 (motions). Plaintiffs then found counsel to represent them, and the parties stipulated to allowing Plaintiffs to file a FAC. *See* Docket No. 29 (stipulation and order). Plaintiffs did so, and the FAC is now subject to challenge by another motion to dismiss, as well as a motion to strike.

Plaintiffs' FAC and CMI's request for judicial notice ("RJN") reflect as follows.

Plaintiffs own certain real property located in San Francisco. *See* FAC ¶ 1. In April 2007, Plaintiffs obtained a primary and secondary loan on the property from CMI. *See* FAC ¶ 10. Several years later, in October 2009, Plaintiffs "were experiencing financial and medical hardships," and therefore they contacted CMI to see if they could get assistance with respect to the loans. FAC ¶ 13. Subsequently, CMI acknowledged the request for assistance but also notified Plaintiffs that the primary loan was in default in the amount of $8,709.81. *See* FAC ¶ 14.

In December 2009, Plaintiffs contacted CMI again and spoke with a representative by the name of Tina. Tina informed Plaintiffs that they were "approved for a 'Forbearance Plan' that would commence in January 2010." FAC ¶ 16. Under the Forbearance Plan, Plaintiffs were to make seven monthly payments of $500 each from January 15 to July 15, 2010. *See* FAC ¶ 17. According to the FAC, the only thing that CMI would forbear from doing in return was to foreclose. *See, e.g.*, FAC ¶ 20 ("As explained to Plaintiff Maryline Linares, the terms of the Forbearance Plan provided that, so long as PLAINTIFFS complied by making on time monthly payments . . . , PLAINTIFFS were protected from any foreclosure proceedings from CITI."); FAC ¶ 47 ("Defendant CITI intentionally and willfully deceived PLAINTIFFS, making misrepresentations to PLAINTIFFS that the Forbearance Plan offered would prevent any foreclosure . . . .").

Tina also told Plaintiffs at the time that "there was 'no reasonable prospect of recouping in the years ahead'" and "urged PLAINTIFFS to contact [the] Loan Modification Department regarding a short refinance for both the primary and secondary loans." FAC ¶ 18 (emphasis

2

omitted). There is no allegation that Tina, or any other CMI representative, ever promised Plaintiffs that they would get a loan modification.

Subsequently, Plaintiffs made the $500 monthly payments for the months of January, February, March, April, May, and June 2010. CMI accepted and cashed each of those payments except the last (June 2010). *See* FAC ¶ 23.

During the time that Plaintiffs were making the monthly payments, they received – on three occasions – letters from CMI notifying them that their primary loan was in default. *See, e.g.*, FAC ¶¶ 24, 27, 33. On each occasion, a CMI representative confirmed the Forbearance Plan and told Plaintiffs to disregard the letter. *See* FAC ¶¶ 26, 28, 34. However, in June 2010, Plaintiffs' June 2010 payment was rejected; on the back of Plaintiffs' check, the following was printed: "'LOAN TOO DELINQUENT . . . – FORECLOSURE LOAN CMI.'" FAC ¶ 35.

Subsequently, in July 2010, CMI recorded a Notice of Default and Election to Sell Under Deed of Trust. *See* FAC ¶ 39; *see also* Defs.' RJN, Ex. 2 (notice). In the notice, CMI falsely alleged that Plaintiffs had been contacted to assess their financial situation and explore options to avoid foreclosure. *See* FAC ¶ 39.

On July 23, 2010, a CMI representative told Plaintiffs that there was no Forbearance Plan. The representative also told Plaintiffs that they had "90 days to come up with a solution in order to make nine payments of $2,763.96 each, totaling $24,875.74 to bring the primary loan current, in addition to the monthly mortgage payment of $2,238.58." FAC ¶ 40.

On October 31, 2010, Plaintiffs filed for Chapter 13 bankruptcy. *See* FAC ¶ 41.

In August 2012, CMI rescinded the notice of default. *See* Defs.' RJN, Ex. 3 (notice).

In September 2012, Plaintiffs received a letter from CMI, stating that there was a Forbearance Plan but that it had been cancelled because the first payment was due on January 15, 2010, but was not received until January 23, 2010. *See* FAC ¶ 44.

On February 22, 2013, Plaintiffs' bankruptcy case was dismissed without their obtaining a discharge. *See* FAC ¶ 45.

In May 2014, CMI recorded a loan modification agreement that it entered into with Plaintiffs. *See* Defs.' RJN, Ex. 4 (modification agreement).

3

Based on, *inter alia*, the above allegations, Plaintiffs have asserted two claims for relief: (1) intentional misrepresentation and (2) a violation of California Business & Professions Code § 17200.

## II.   MOTION TO DISMISS

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim for relief.

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.

*Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

B.   Intentional Misrepresentation

As pled in the FAC, Plaintiffs' misrepresentation claim seems to be predicated on (1) CMI's failing to respond to Plaintiffs' request for a short refinance of both their primary and secondary loans, *see* FAC ¶¶ 67-71, and (2) CMI's foreclosing on the property "in defiance of the Forbearance Plan." FAC ¶ 72. In the motion to dismiss, CMI argues that the intentional misrepresentation claim is time barred. It also argues that, even if not time barred, Plaintiffs have failed to plead all of the essential elements of a claim for intentional misrepresentation. The Court agrees with CMI that the misrepresentation claim is time barred and therefore does not address CMI's other arguments.

As CMI asserts, regardless of which predicate of the misrepresentation claim is at issue, the misrepresentation claim accrued at the very least when CMI sent the notice of default to Plaintiffs in July 2010. The notice of default made clear that Plaintiffs would not get refinancing and that foreclosure would be going forward. Because there is a three-year statute of limitations for fraud

claims, *see* Cal. Code Civ. Proc. § 338(d), Plaintiffs should have filed suit by July 2013, but Plaintiffs did not initiate this action (in state court) until May 23, 2014.

In their opposition brief, Plaintiffs pointed out that they were in Chapter 13 bankruptcy proceedings between October 31, 2010, and February 22, 2013.  According to Plaintiffs, while they were in bankruptcy, the running of the limitations period was tolled.  In support of this tolling argument, Plaintiffs cited to three different statutes:

(1) California Code of Civil Procedure § 356, which provides that, "[w]hen the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action."  Cal. Code Civ. Proc. § 356; *see also Hoover v. Galbraith*, 7 Cal. 3d 519, 526 (1977) (in discussing § 356, noting that "[t]he limitation period has been tolled during the period in which a plaintiff is legally prevented from taking action to protect his rights").

(2) Title 11 U.S.C. § 362, which provides in relevant part that, a petition in a voluntary bankruptcy case "operates as a stay, applicable to all entities of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(1).

(3) Title 11 U.S.C. § 108, which provides in relevant part that, "[i]f applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of – (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief."  11 U.S.C. § 108(a).

Plaintiffs' position is problematic.  The California statute, § 356, simply indicates that there will be tolling if there is a statutory prohibition – a prohibition which prevents the plaintiff legally from taking action to protect his/her rights.  Therefore, the question turns on whether the Bankruptcy Act – either § 362 or § 108 – creates such a statutory prohibition.  While courts have held that the

Bankruptcy Act can provide a statutory prohibition for purposes of § 356, *see, e.g.*, *Schumacher v. Worcester*, 55 Cal. App. 4th 376, 380 (1997) (stating that "[a] bankruptcy stay has been held to be a 'statutory prohibition' within the meaning of Code of Civil Procedure section 356"; concluding that, under § 356, "the period of time of the automatic stay [under § 362] should not be counted as part of limitation time"), Plaintiffs have failed to show that either bankruptcy statute cited above is applicable here.

As indicated above, § 362 of the Bankruptcy Code provides for an automatic stay only with respect to claims *against* a debtor. *See In re Palmdale Hills Property, LLC*, 654 F.3d 868, 875 (9th Cir. 2011) (stating that "[t]he stay does not prevent a plaintiff/debtor from continuing to prosecute its own claims nor does it prevent a defendant from protecting its interests against claims brought by the debtor" – "even if the defendant's successful defense will result in the loss of an allegedly valuable claim asserted by the debtor"); *Van Curen v. Fed. Crop Ins. Corp.*, No. C 13-04601 CRB, 2014 U.S. Dist. LEXIS 55862, at *17 (N.D. Cal. Apr. 21, 2014) (stating that "[t]he automatic stay [imposed under § 362] applies to actions against a debtor, but does not prevent a debtor from offensively asserting a claim"); *In re White*, 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995) (stating that "[t]he trustee or debtor in possession is not prevented by the automatic stay from prosecuting or appearing in an action which the debtor has initiated and that is pending at the time of bankruptcy[;] [e]ven if the debtor requires time to evaluate the litigation in terms of the bankruptcy, the time limitation on a debtor's action is not tolled by the filing of a bankruptcy petition.").[2] Here, Plaintiffs are the debtors who have a claim to assert; they were not barred by § 362 from taking legal action to protect their rights.

As for § 108(a), courts have held that it is, in essence, a tolling provision. *See, e.g.*, *Stephenson v. Chase Home Fin. LLC*, No. 10cv2639-L(WMc), 2011 U.S. Dist. LEXIS 54791, at *14-15 (S.D. Cal. May 23, 2011) (concluding that plaintiffs' TILA claim was not time barred

---

[2] In *White*, the bankruptcy panel explained that "the policy behind § 362 is to protect the estate from being depleted by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal and distribute the assets" and that "[t]he automatic stay is also intended to give debtors breathing room by stopping 'all collection efforts, all harassment, and all foreclosure actions'"; "[t]herefore, the primary purpose of § 362 is not applicable to offensive actions by the debtor in possession or bankruptcy trustee." *White*, 186 B.R. at 704.

because of § 108(a)). But by its terms the statute will only extend the statute of limitations to "the later of – (1) the end of [the limitations] period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief." 11 U.S.C. § 108(a). In the instant case, the end of the limitations period for the misrepresentation claim was July 2013, and Plaintiffs did not file suit until May 23, 2014.[3] As for the second prong of § 108(a), "order for relief" means the commencement of a voluntary bankruptcy case. *See* 11 U.S.C. § 301(b) (providing that "[t]he commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter"); *In re Glenn*, 760 F.2d 1428, 1437 n.6 (6th Cir. 1985) (stating that, "[i]n a voluntary case, the entry of the order for relief is the filing of the petition commencing the case") (citing S. Rep. No. 598, 95th Cong., 1st Sess. 28 (1977)); *see also Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 755 (E.D. Va. 2009) (citing § 108(a) for the proposition that, "where a debtor files a bankruptcy petition before the expiration of a statute of limitations, the Bankruptcy Code permits the bankruptcy trustee to file the claim on the debtor's behalf provided the trustee does so either before the claim's statutory period expires or before two years has elapsed from the time the bankruptcy petition was filed"). Here, Plaintiffs claim to have initiated their bankruptcy proceedings in October 2010. That being the case, Plaintiffs only had until two years later – October 2012 – to assert their misrepresentation claim, but they did not do so. Not only was this suit at bar not timely under § 108, but also Plaintiffs have failed to demonstrate § 108 acted as a prohibition to their taking legal action against CMI.

At the hearing, Plaintiffs completely backtracked from the above arguments presented in their papers and instead voiced for the first time a new theory in support of their case. More specifically, completely contrary to the position they took in their papers, Plaintiffs argued that § 108(a) is a benefit given to trustees and even, *e.g.*, Chapter 11 debtors, but *not* to Chapter 13 debtors. According to Plaintiffs, debtors in Chapter 13 are prohibited from filing suit; only the trustee can. Thus, this constitutes a "prohibition" under § 356 of the California Code of Civil Procedure. This new argument, however, is no benefit to Plaintiffs either.

---

[3] Plaintiffs have not argued that the limitations period was suspended for purposes of § 108(a).

7

As a preliminary matter, the Court acknowledges that there is conflicting case law as to whether a Chapter 13 debtor can claim the benefit of § 108(a). *Compare, e.g.*, *Barnes v. Bank of N.Y. Trustee EQCC 2001-F1 Trust*, 366 Fed. Appx. 381, 384 (3d Cir. 2010) (declining to endorse the district court's conclusion that "§ 108 applies 'only to trustees or Chapter 11 debtors in possession'" but not a Chapter 13 debtor; noting that, in a prior case, "we did apply § 108(b) to extend a statutory grace period in the context of a petition filed by a Chapter 13 debtor"); *In re Carpenter*, No. 11-20896-TPA, 2013 Bankr. LEXIS 1867, at *44-45 (W.D. Pa. May 7, 2013) (acknowledging that "Section 108(a) is phrased so as to apply only to actions commenced by the 'trustee,'" but concluding that "a Chapter 13 debtor should also get the benefit of the two year extension as provided in Section 108(a) because the debtor was essentially acting the same was a Chapter 11 debtor-in-possession . . . by virtue of 11 U.S.C. § 1306(b)"), *with Estate of Miller Carr v. United States*, 482 F. Supp. 2d 842, 850 (W.D. Tex. 2007) (stating that, "in the context of bankruptcies filed under Chapter 13, the extension offered by section 108(a) is available to Trustees only, and not to Chapter 13 debtors"); *In re Johnson*, No. 08-40032, 2009 Bankr. LEXIS 2260, at *8-9 (S.D. Ill. July 29, 2009) (stating that "[t]his Court cannot assume, based merely on the debtor's right to sue, that the Chapter 13 debtor is then also entitled to toll the statute of limitations, especially in light of the purpose behind § 108," which "is to allow the trustee additional time 'to discover and evaluate potential causes of action after stepping into the shoes of the debtor'[;] [a] Chapter 13 debtor . . . would not need the additional time to get up to speed on [his] own cause of action").

But even if Plaintiffs are correct that a Chapter 13 debtor is not entitled to rely on § 108(a), that still leaves the question here of what prevented Plaintiffs from moving forward with a claim against CMI? Plaintiffs suggest that § 108(a) prevented them from filing a claim, *see* Pls.' Supp. Br. at 4 (asserting that "Sec[.] 108(a) functioned as a statutory prohibition under the application of California Code of Civ. Proc. Sec. 356"), but nothing about § 108(a) – either explicitly or implicitly – provides that only a trustee, and not a Chapter 13 debtor, has the capacity to sue while the bankruptcy is pending. The Court thus reaches the issue for which it specifically asked the parties to

8

provide supplemental briefing, that is, whether Chapter 13 stands as a statutory prohibition (for purposes of § 356) that prevented Plaintiffs from filing suit. Here, the clear answer is no.

Title 11 U.S.C. § 1306(b) provides: "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b). In *In re DiSalvo*, 219 F.3d 1035 (9th Cir. 2000), the Ninth Circuit affirmed the continuing role of a debtor in Chapter 13 proceedings:

> "In [Chapter 7] liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate. The same cannot be said for trustees under the reorganization chapters. In those regimes, the debtor has express authority to sue and be sued. Bankruptcy Rule 6009, which applies to Chapters 7, 11, and 13, directs that "with or without court approval, *the trustee or debtor in possession* may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal." Fed. R. Bankr. P. 6009 (emphasis added). The Chapter 13 debtor has been considered analogous to Chapter 11, which grants the debtor full authority as representative of the estate typical of a trustee. *See* 11 U.S.C. § 1107."

*Id.* at 1039 (quoting *Cable v. Ivy Tech St. College*, 200 F.3d 467, 472 (7th Cir. 1999); emphasis in original); *see also Dorado v. Shea Homes Ltd. P'ship*, No. 1:11-cv-01027 OWW SKO, 2011 U.S. Dist. LEXIS 97672, at *8-9 (E.D. Cal. Aug. 31, 2011) (noting that "[t]he Code expressly provides that Chapter 13 debtors retain possession of property in the bankruptcy estate" and further "provides that a debtor in possession, such as a debtor filing for the protections of Chapter 13, enjoys express authority to sue or be sued on behalf of the bankruptcy estate"); *Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418, 425 (N.D. Cal. 1999) (Wilken, J.) (in pre-*DiSalvo* case, taking note that, under Second Circuit law, "Chapter 13 debtors have standing to pursue claims against others when those claims belong to the bankruptcy estate because 'the reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case'"; also taking note of a Third Circuit decision stating that "a Chapter 13 debtor could continue to prosecute prepetition claims after filing his bankruptcy petition

1  because 'an essential feature of a Chapter 13 case is that the debtor retains possession of and may
2  use all the property of his estate, including his prepetition causes of action'").[4]

3  In light of *DiSalvo* and § 1306(b), Plaintiffs' argument that, as Chapter debtors, they were
4  prohibited from suing CMI, is without merit. And notably, even one of the main cases cited by
5  Plaintiffs, *In re Bowker*, 245 B.R. 192 (D.N.J. 2000), is ultimately unfavorable to their position,
6  concluding that a Chapter 13 debtor alone, and not the trustee, should be responsible for retaining
7  special counsel in a lawsuit. While the *Bowker* court did take note of some cases holding that "the
8  chapter 13 trustee has the exclusive standing to sue on behalf of the estate," *id.* at 194, it criticized
9  those cases and thus reached a conclusion that was contrary to those cases.

10  In sum, there is no statutory prohibition that extends the limitations period under California
11  Code of Civil Procedure § 356. Accordingly, the Court dismisses Plaintiffs' misrepresentation claim
12  because it is time barred. Because this is a deficiency that is incapable of being cured, the dismissal
13  of the misrepresentation claim is with prejudice.

14  C.  Section 17200

15  In their § 17200 claim, Plaintiffs essentially allege that (1) CMI made a false promise not to
16  foreclose and that (2) CMI improperly "added principal on top of principal in calculating the
17  'default' amount PLAINTIFFS owed, making it impossible for PLAINTIFFS to catch up with their
18  payments, and when PLAINTIFFS finally did get a loan modification with [CMI], all of this
19  improper principal on top of principal was added onto the back end of the loan." FAC ¶ 58(d).

20  1.  False Promise

21  As to Plaintiffs' first theory, CMI argues for dismissal because § 17200 provides a remedy
22  for certain kinds of injuries only, and, here, Plaintiffs have not pled any such injury. CMI's
23  argument is persuasive. California Business & Professions Code 17203 provides that a "court may
24  make such orders . . . as may be necessary to restore to any person in interest any money or property,
25  real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. &

---

[4] Plaintiffs assert that "*Donato* has been heavily criticized, distinguished, and declined to follow." Pls.' Supp. Br. at 6. But tellingly, Plaintiffs cite to no specific authority to support this assertion, and the Court's own research revealed no such problem with *Donato*, particularly on the point at issue in this case.

10

Prof. Code § 17203. "[This] restitutionary relief is limited to money or property lost by the plaintiff *and acquired by the defendant.*" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) (emphasis added)). Here, Plaintiffs have alleged that they "have suffered economic damages . . . as they were forced to spend time and money in filing for bankruptcy, attorney fees, [and] unwarranted late fees and other charges." FAC ¶ 63. But money that Plaintiffs spent on the bankruptcy proceeding and on attorney's fees was not acquired by CMI, and therefore they cannot form the basis of § 17200 claim. Recovery of these expenses is not restitution. While "late fees and other charges" did (presumably) go to CMI, the problem for Plaintiffs is that they have not alleged that CMI promised to waive any such fees pursuant to the Forbearance Plan. As the FAC stands, all that Plaintiffs have alleged is that CMI promised not to foreclose so long as Plaintiffs made payments under the Forbearance Plan. Thus, Plaintiffs have failed to allege any cognizable injury or claim of reasonable misrepresentation for purposes of § 17200.

Even if the remedy problem could be overcome, the Court notes that there are other deficiencies with Plaintiffs' § 17200 claim as pled. First, to the extent Plaintiffs argue that CMI's false promise constituted *deceptive* conduct, Plaintiffs have failed to adequately allege that CMI knew the promise was false at the time it was made. Plaintiffs have made only a conclusory allegation of knowledge without any facts to support such.[5] *See Iqbal*, 556 U.S. at 678 (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Second, to the extent Plaintiffs assert that CMI's false promise constituted *unlawful* conduct, *see* FAC ¶ 55 (referring to a violation of the Rosenthal Fair Debt Collection

---

[5] The Court, however, rejects CMI's contention that the § 17200 deceptive conduct claim is time barred because the misrepresentation claim is time barred. Section 17200 has a four-year statute of limitation that applies even if the misrepresentation claim has a shorter limitations statute. *Cf. Ra Med. Sys. v. PhotoMedex, Inc.*, 373 Fed. Appx. 784, 786 (9th Cir. 2010) ("California's Unfair Competition Law ('UCL') four-year statute of limitations 'applies even if the borrowed statute has a shorter limitations statute.'") (quoting *Blanks v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336, 364 (2009)).

11

Practices Act, *see* Cal. Civ. Code § 1788 *et seq.*), they have not alleged any facts to support a Rosenthal claim.[6]

### 2. Principal Upon Principal

In their second § 17200 theory, Plaintiffs maintain that CMI acted improperly because it "added principal on top of principal in calculating the 'default' amount PLAINTIFFS owed, making it impossible for PLAINTIFFS to catch up with their payments, and when PLAINTIFFS finally did get a loan modification with [CMI], all of this improper principal on top of principal was added onto the back end of the loan." FAC ¶ 58(d). As CMI argues in its papers, even if the Court were to apply the most generous test for unfairness under § 17200, *see Lozano v. AT&T Wireless Services*, 504 F.3d 718, 735 (9th Cir. 2007) (holding that, at least in a consumer case, a court could evaluate whether an act was unfair by applying a balancing test – *i.e.*, "the harm to the consumer against the utility of the defendant's practice"), there is a fundamental problem with Plaintiffs' second theory. Even if CMI agreed, under the Forbearance Plan, to take a reduced payment for several months in exchange for a promise not to foreclose during that period, that does not mean that CMI thereby agreed to "forgive" Plaintiffs for the difference that they otherwise would have had to pay. *See* Reply at 6 (noting lack of allegation that CMI agreed to waive full payments). No promise to reduce the principal amount of the loan is alleged.

## III.  **MOTION TO STRIKE**

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Although both parties have provided the Rule 12(f) legal standard for the pending motion, the Court concludes that Rule 12(f) is not the right lens to evaluate the issues presented in the motion. In *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), the Ninth Circuit held that, where a defendant argues that certain

---

[6] While, for the reasons stated above, there are problems with the deceptive and unlawful § 17200 claims, the Court acknowledges that Plaintiffs have also claimed *unfair* conduct on the part of CMI. This claim is potentially viable – *i.e.*, even if CMI's promise to forbear on foreclosure was not false at the time it was made, a reasonable jury could still conclude that it was unfair for CMI to breach that promise.

1  damages should be stricken from the complaint because they are precluded as a matter of law, that is
2  better suited for a Rule 12(b)(6) or Rule 56 motion, and not a Rule 12(f) motion. *See id.* at 974. The
3  court explained: "Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means
4  to dismiss some or all of a pleading . . . , we would be creating redundancies within the Federal
5  Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a
6  later stage in the proceedings) already serves such a purpose." *Id.* The Ninth Circuit also pointed
7  out that Rule 12(f) motions are reviewed only for an abuse of discretion, while Rule 12(b)(6)
8  motions are reviewed de novo, and it would make no sense to subject a district court's action to
9  different standards of review when the action itself was the same. *See id.* Thus, the Court deems
10 CMI's motion to strike as a motion to dismiss.

B.  Emotional Distress

CMI argues first that the reference in the FAC to emotional distress damages should be stricken from the pleading. In their opposition brief, Plaintiffs clarify that they are not seeking emotional distress damages based on the alleged misconduct of CMI, and therefore there is no ripe dispute for the Court to resolve.

C.  Punitive Damages

CMI argues second that the reference in the FAC to punitive damages should also be stricken. The Court evaluates this argument with respect to each claim raised in the FAC.

1. Section 17200 Claim

Punitive damages are not available for a violation of § 17200. *See In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007) (stating that "it is settled law that punitive damages are not available under section 17200"); *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) (stating that, for a violation of § 17200, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution"; adding that "[p]laintiffs may not receive damages, much less *treble* damages, or attorney fees") (emphasis in original). Therefore, any claim for punitive damages is hereby dismissed from the FAC.

To the extent Plaintiffs argue that, regardless of punitive damages, they are still entitled to treble damages for a violation of § 17200, they are incorrect. *See id.* As CMI points out, California

Business & Professions Code § 17082 does allow for treble damages, but it is part of the Unfair Practices Act, which is independent of § 17200. *See id.* (stating that "[t]he unfair competition law is independent of the Unfair Practices Act and other laws"); *see also* Cal. Bus. & Prof. Code § 17082 (providing for treble damages "[i]n any action under this chapter," which does not include § 17200). The FAC does not allege violation of the Unfair Practices Act.

2. Intentional Misrepresentation

Punitive damages, of course, are potentially available for a tort claim. However, as discussed above, the misrepresentation claim is time barred.

## IV. CONCLUSION

For the foregoing reasons, the Court grants both CMI's motion to dismiss and motion to strike (which the Court has construed as a motion to dismiss). The misrepresentation claim is dismissed with prejudice. The § 17200 claim is also dismissed but Plaintiffs have leave to amend the § 17200 claim, if they can in good faith plead allegations to cure the deficiencies discussed above. If Plaintiffs amend, they should bear in mind that punitive and/or treble damages are not available for any § 17200 claim. Plaintiffs have thirty days from the date of this order to amend.

This order disposes of Docket Nos. 33 and 34.

IT IS SO ORDERED.

Dated: May 5, 2015

EDWARD M. CHEN
United States District Judge